## MILLER vs. PRICE and another.

*What constitutes a partnership—Parties to suit—Lien of partner for balance of account.*

1. An arrangement between A. and B. for buying and selling on their joint account in the name of A. and B. a certain quantity of pork, by which A. was to furnish whatever money should be necessary in the business, aside from such advances as might be procured on said pork, and B. was to attend personally to the purchase and shipment, and out of the proceeds of the sale, after deducting the costs, expenses and disbursements of every kind, A. was to be reimbursed the amount advanced by him, with interest, and the residue, being the net profits, was to be equally divided between them, *held* to constitute a partnership.

2. The complaint of A. alleges that the whole quantity of pork contemplated in said arrangement had been purchased and sold, and the net proceeds in the hands of the consignees and immediately due and payable to A. and B., after paying all costs and expenses, but before deducting the amount advanced by A., was less than the sum so advanced and belonged wholly to the plaintiff, but was paid over to defendants on an order drawn in their favor by B., in the name of A. and B., for B.'s individual debt, and that defendants knew, before they received the order, that the funds would belong jointly to A. and B., and were fully notified, before drawing the money, that the same belonged wholly to A., yet refused on demand to pay it over to him. *Held*, on demurrer, that A. could not maintain the action without making B. a party.

3. In general, one creditor has no priority of right to another on the ground that he advanced the funds out of which the debtor's property was made.

4. But a partner has a right to payment of his balance of account against his copartner out of the partnership property, before any part thereof can be taken for the individual debt of such co-partner.

APPEAL from the County Court of *Milwaukee* County.

Action against *Warrick Price* and *William B. Price*, for moneys in their hands alleged to be the property of the plaintiff. The complaint alleges that in 1862 the plaintiff and one Harris entered into an arrangement for the purpose of buying and selling, upon joint account, a certain quantity of pork packed in barrels, and that in such business there was used the joint names of Harris & *Miller* ; that the terms of said arrangement were as follows : That plaintiff should furnish whatever money should be necessary in said business, aside from such advances as might be procured on said pork, and Harris should attend personally to the purchase and shipment of said pork ; that

said pork should be purchased in the state of Wisconsin and shipped to the city of New York for sale; that out of the proceeds of said sale, after deducting the costs, expenses and disbursements of purchasing and shipping the same, including the transportation charges, and the cost of selling the same in said city of New York, and after repaying with interest such advances of money (to be used with that contributed by the plaintiff in the purchase of said pork) as might have been obtained, and the expenses attending the same as aforesaid, the plaintiff should be paid and reimbursed the amount of money so advanced by him, with interest; and that the residue, being the net profits thereof, should be equally divided between the plaintiff and Harris. It is then alleged that, pursuant to this arrangement, plaintiff, in December, 1862, advanced $4000 to be used in the purchase of pork; that there was purchased in this state, under said arrangement, fifteen hundred and sixteen barrels of pork, which was, prior to November 10th, 1863, shipped to New York to be sold, consigned to the firm of David Dows & Co. ; that on said 10th of November, said pork had been fully disposed of by said David Dows & Co., and there remained in their hands $3960.46 to the credit of the plaintiff and Harris, and which was then due and immediately payable to them, and which was the net proceeds of the sales of said pork, after deducting certain advances made by said David Dows & Co. thereon, and was the whole net proceeds thereof without deducting said sum of $4000 advanced by the plaintiff, and, being less than the amount so advanced, belonged wholly to the plaintiff. It is further alleged that said arrangement between the plaintiff and Harris extended only to the purchase of said fifteen hundred and sixteen barrels of pork, and that the same was finally closed on the sale thereof, subject only to the payment to plaintiff of said sum of $3960.46. It is then alleged that on the 6th of May, 1863, said Harris gave to defendants an order upon David Dows & Co., signed "Harris & *Miller*," directing them to pay the defendants the

net proceeds coming to Harris & *Miller* on the sale of said pork; that said order was given solely in payment or as security for Harris's individual debt to the defendants, and plaintiff did not know that said order was given until long after, and never consented thereto; that defendants were notified, at the time they took said order, that the money, if any, that would be paid thereon, was the joint property of the plaintiff and Harris, and before they received any money thereon were fully notified that Harris had no interest in the money to be paid thereon; that on the 11th of November, 1863, defendants received upon said order from David Dows & Co., said sum of $3960.40; and that plaintiff had demanded and defendants refused payment to him of said sum; for which amount, with interest, this action is brought.

Demurrer to the complaint, for insufficiency of facts, for defect of parties plaintiff, and for defect of parties defendant. From an order overruling the demurrer, defendants appealed.

*Carter, Pitkin & Davis*, for appellants:

A partner cannot bring an action at law against a third party for his interest in or proportion of the partnership property fraudulently assigned by his co-partner. 20 Pick., 96; 5 Cow., 489. If any cause of action exists against the defendants, it must be in favor of both Harris and *Miller*. 16 Johns., 34; 6 Pa. St., 492; 7 Wend., 339; 5 Cow., 489. Harris is a necessary party to a complete determination of the controversy between the parties. R. S., ch. 122, secs. 18, 19, 22; 2 Duer, 663; 29 Barb., 25.

*Butler & Cottrill*, for respondent, to the point that the complaint did not show a partnership, cited Story on Part., secs. 40, 41, 57; *Waugh v. Carver*, 1 Smith's L. C., 968, and notes; *Hesketh v. Blanchard*, 4 East, 144; *Smith v. Watson*, 2 B. & C., 401; *Meyer v. Sharpe*, 5 Taunt., 74; *Dry v. Boswell*, 1 Campb., 329; *Muzzy v. Whitney*, 10 Johns., 226; *Turner v. Bissell*, 14 Pick., 192; *Pattison v. Blanchard*, 1 Seld., 186; *Peltier v. Sewall*, 12 Wend., 386; *Ward v. Gaunt*, 6 Duer, 257; *Fitch v. Hall*,

25 Barb., 13; *Brockway v. Burnap*, 16 id., 309; *Ross v. Drinker*, 2 Hall, 415; *Heimstreet v. Howland*, 5 Denio, 68. The case is simply this: Harris, without authority, pledged *Miller's* money to the appellants. They took it with full knowledge of all the facts. *Miller* is alone interested in recovering it; and the appellants refused to pay it.

*Carter*, *Pitkin* and *Davis*, in reply, cited as to the question of partnership, Story on Part., sec. 48; *Holt v. Kernodle*, 1 Iredell, 199; *Julio v. Ingalls*, 1 Allen, 41; *Ward v. Thompson*, 22 How., (U. S.), 330; *Perry v. Butt*, 14 Ga., 699; *Potter v. Moses*, 1 R. I., 438; *Berthold v. Goldsmith*, 24 How., 536; *Emanuel v. Draugn*, 14 Ala., 303; *Brigham v. Dana*, 29 Vt., 1; 3 Kent, 24, and notes.

COLE, J. If indeed a partnership existed between Harris and *Miller*, then it seems to be well settled that both should join in the action. For in that case the money would belong to the firm, and be subject to the liabilities and incidents of the partnership until dissolution, and one partner could not sue and recover it at law. The question therefore arises, does the complaint show that a partnership existed between Harris and *Miller?*

From the facts stated in the complaint it is obvious that there was to be a joint loss in the business, if the returns should fall short of the outlay, and a corresponding gain, if the speculation was successful; in other words, a community of profit and loss, which is one of the leading features of a partnership. The pork, under the arrangement, was purchased on joint account of Harris and *Miller;* Harris was to attend personally to the business; *Miller* was to make advances whenever the same should become necessary; the costs and expenses and disbursements were to be deducted from the sales; the advances made by *Miller* and others, with interest, were to be repaid; and the residue, being the net profits of the business, was to be divided between Harris and *Miller*. That Harris and

*Miller* intended by the arrangement to create a partnership, and that they did in fact create one, may be determined by another test. Suppose Harris had himself collected the money of Dows & Co.: could the plaintiff have maintained an action at law against him for his share of it, or would he have been put to his suit in equity for an accounting and settlement of the affairs of the firm? It appears to us most clearly that the latter would be his remedy, and that he would be entitled to an accounting; because, after the specified deductions were made, he was to have one half the profits of the business, and of course a preference in payment over the individual creditors of Harris.

Unless, under the arrangement, *Miller* is held and deemed to be a partner in the business, and interested in the profits thereof, as profits, then it would seem to follow that he is a mere creditor of Harris, having made advances for buying and shipping the pork relying on his personal responsibility. In the latter case, he would certainly have no preference over other creditors of Harris; for " the general rule of law admits of no preference as between persons claiming in different rights against the estate of a bankrupt or insolvent debtor, on the ground that the property in question has resulted from the labor or sacrifices made by one claimant, and should therefore be appropriated to him, to the exclusion of the others. Thus, when goods are sold and delivered to an insolvent purchaser, they may be seized in execution by an antecedent creditor, and applied to the discharge of his debt, without any regard to the claim of the vendor for the purchase money. But a debt due for advances made in money or goods by one partner to another, in the course of the partnership business, is entitled to a preference, so far as the partnership assets are concerned, over all debts due by the debtor individually, and must be paid in full before they can be taken into consideration. In other words, each partner has a lien on the partnership property for the balance of accounts between himself and his co-partners, which

he may enforce as against all persons claiming under them in their individual capacity. *Pierce v. Jackson*, 6 Mass., 242; *Christian v. Ellis*, 1 Grattan, 396; *Gibson v. Stevens*, 7 N. H., 352; *Garbett v. Veale*, 5 Q. B., 408. But this advantage of having a specific security for the amount due on a business contract, as against the separate creditors of the other party to the contract, can only exist where the contract is one of partnership, and is necessarily and essentially coupled with the disadvantage of being personally liable for all debts contracted on account of the business to which the contract relates. "

These remarks of the American annotator to *Waugh v. Carver*, 1 Smith's Leading Cases, 968, 983, are quite applicable and pertinent to the point just suggested. If a partnership relation did not exist, then *Miller* has only a right of action for the amount due him on the contract, without having any specific lien on the proceeds of the business.

Further, it is said that there was but a single transaction in purchasing the pork. But we think it appears from the complaint that there was more than one transaction in buying pork; and the fair inference from its allegations is, that a partnership existed between the parties. If so, it is clear that the money sued for belongs to the firm.

*By the Court.*—The order overruling the demurrer to the complaint is reversed, and the cause remanded to the county court for further proceedings.