P. A. BELSER *v.* FRANK NICHOLS, LIMITED, CLIFF F. G. HOOPER, V. E. M. OSORIO AND BANK OF HAWAII, LIMITED.

No. 2009.

Submitted September 9, 1931.      Decided September 22, 1931.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY BANKS, J.

This is a suit in equity to enjoin the application of money in the hands of a garnishee to judgments rendered in the district court of Honolulu. The court below denied the relief prayed for and dismissed the bill. The complainant appealed.

On August 26, 1930, P. A. Belser, the plaintiff herein, gave his check to one Cliff F. G. Hooper for the sum of $2000. On the same date Hooper deposited the check in the Bank of Hawaii, Limited, where he already had a personal deposit of $802.68, and the money called for by the check was added to his credit, thus increasing his deposit to $2,802.68. On August 27 Hooper sailed for Australia. Prior to his departure he drew against this deposit eleven checks, totaling $1011.82, thus reducing his deposit to $1790.86. On the day of his departure he withdrew from the bank $1,469, thus leaving a balance of $321.86, which the bank withheld for the purpose presently to be stated. This balance represents the money involved in this suit. At the time Belser delivered his check to Hooper, Hooper gave Belser the following receipt: "Received from P. A. Belser the sum of two thousand dollars—$2000.00, to be used for him for the construction of Golf Courses in Australia. The same to be used for no other purpose whatever." (Signed) "Cliff F. G. Hooper." Subsequent to the deposit of Belser's

check with the bank Frank Nichols, Limited, and V. E. M. Osorio brought separate suits against Hooper in the district court of Honolulu, naming the Bank of Hawaii, Limited, as garnishee. In the Nichols case the process of garnishment was served on the bank at 11:40 o'clock A. M., August 27, 1930, and in the Osorio case it was served at 2:08 o'clock P. M. on September 12, 1930. On the morning of August 28 Belser notified the bank that he was the owner of all the money which it had on deposit in Hooper's name. On August 30 the bank filed in the district court its answer and disclosure in the Nichols case. It admitted that it had in its hands to Hooper's credit the sum of $321.86 but alleged that on August 28 it was informed by Paul A. Belser that he was the true owner of the money. Because of this information the garnishee submitted in its answer that the money should not be deemed subject to the garnishment until its owner- ship had been legally established. Substantially the same answer and disclosure was made in the Osorio case. The district court, however (apparently without notice to Belser), entered judgment against the garnishee. On September 22 the instant suit was brought by Belser for the purpose of establishing his ownership of the money and preventing its application to the judgments rendered in the Nichols and Osorio cases. By stipulation the money was deposited by the bank with the clerk of the circuit court to await the outcome of the present suit.

The first question to be determined is whether the $2000 was given to Hooper to be used by him for his own purposes or whether it was given to him in trust to be used for Belser's benefit. We think under the terms of the receipt given by Hooper to Belser there can be no doubt on this subject. According to this receipt the money was to be used for Belser for the construction of golf courses in Australia and for no other purpose whatso-

ever. The money thus remained the property of Belser until such time as it might be used for the purposes indicated in the receipt. It did not lose its character as a trust fund nor was its ownership changed by being placed to Hooper's personal credit in the bank and mingled with his personal funds.

In *Morrill* v. *Raymond,* 28 Kans. 415, 418, 42 Am. Rep. 167, 168, Speer & Company advanced money to Orth to pay for the purchase of corn, and for no other purpose. Orth deposited the money in the bank in his account, which from time to time showed other moneys than that of Speer & Company. The money was deposited in his own name and the bank was not informed of Orth's arrangement with Speer & Company. At the time his account was garnished he had $692.12 of Speer & Company's money which he had not expended. His account with the bank showed a balance of $586.50 on that date. The bank thereafter had notice of Speer & Company's claim and set forth that claim in its answer as garnishee. The court said, citing *Central National Bank of Baltimore* v. *Conn. Mut. Life Ins. Co.,* 104 U. S. 54, 26 L. Ed. 693: "* * * yet, in February, Orth drew out of the bank all the moneys belonging to the other persons, and after that date the deposit account was only the money of Speer & Co. The money, therefore, on April 1st, so deposited in the bank, belonged in equity to Speer & Co., and Orth held it in a fiduciary capacity. Its character was not changed by being placed to his credit in his bank account. Before Morrill & Janes, the garnishees, answered, the notice of ownership was given them by Speer & Co. Thereafter the bank had notice of the claim of Speer & Co., and very properly made answer to the garnishment process that the money standing to the credit of C. H. Orth was claimed by Speer & Co. as their own. The money on deposit was Speer & Co.'s, not

Orth's. When the answer of Morrill & Janes was filed, on April 12, 1881, all the parties to this action had knowledge of this fact. A creditor of Orth, therefore, was not entitled, either by attachment or garnishment, to have the deposit in the bank held by Orth as a fund for the use and as the property of Speer & Co. applied to the payment of Orth's debts. Orth had no right to apply this fund, in whole or in part, to pay or reduce the judgment of Raymond against him, and the judgment creditor stood in no better position than the depositor."

The next question that arises is whether the $321.86, withheld by the bank and deposited with the clerk of the circuit court, is a portion of the $2000 intrusted by Belser to Hooper. As we have already observed, prior to the service of the writ of garnishment in the Nichols case Hooper had drawn checks against his bank account in the aggregate sum of $1101.82. Of this amount $217.72 was concededly for Hooper's own personal debts and was chargeable against his own funds. Another item was a check for $602.50 given to the Matson Navigation Company for the transportation of Hooper and his family to Australia. If this amount was also chargeable against Hooper's personal funds, it together with the $217.72 would make an aggregate amount of $820.22 chargeable against Hooper's personal account. This would more than exhaust the $802.68 of Hooper's deposit which was concededly his own money. Under these circumstances the entire balance of the deposit would be Belser's money and subject to the trust agreement.

On the other hand, if the $602.50 for which the check was given to the Matson Navigation Company was not chargeable against Hooper's personal funds but against the $2000 which was subject to the trust, then after its payment there remained in the bank money belonging to Hooper in the sum of $584.96. This, of course, would be

Hooper's money and subject to garnishment by his creditors. Under these circumstances the $321.86 withheld by the bank and now in the hands of the clerk of the circuit court should be applied, as the district court may direct, to the Nichols and Osorio judgments.

At the trial below the complainant offered to prove that under the agreement between himself and Hooper, Hooper was to defray the expense of his own transportation to Australia. This offer was refused on the ground that it was immaterial. We think this was error. If it be a fact that this was the agreement between Belser and Hooper then the cost of the transportation was chargeable against Hooper's funds and not against the trust fund, in which event the money withheld by the bank would not be subject to the payment of Hooper's debts.

It is contended by Nichols and Osorio that in no event can Belser now assert his claim to the money because he did not assert it in the suits against Hooper in the district court and there have his rights determined. This contention is unsound. Belser was a stranger to those suits and so far as the record shows to the contrary had no legal notice of their pendency or that the money which he now claims is his had been garnished. Under these circumstances the judgment rendered against the garnishee was not an adjudication of Belser's rights and not binding on him.

For the foregoing reasons the decree appealed from is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*Thompson, Beebe & Winn* for petitioner.

*W. R. Ouderkirk* for Frank Nichols, Limited, and V. E. M. Osorio.

*Smith, Warren, Stanley & Vitousek* for the Bank of Hawaii.